## JAMES B. BATCHELDER *vs.* THE CITY OF SALEM.

The power conferred on school committees, by *St.* 1838, *c.* 105, § 2, to "select and contract with the teachers for the town and district schools," includes the power to fix the compensation to be paid them, and to bind the town to pay the same.

THIS action, which was brought by the plaintiff to recover his salary as principal of one of the grammar schools of the city of Salem, was submitted to the court upon an agreed statement of facts.

The plaintiff was duly appointed principal of one of the grammar schools of the city of Salem on the 21st of December

1846, and immediately entered on the duties of the office, and continued to discharge them until the 1st of December, 1847. The salaries of the principals of the grammar schools were duly established at $700 a year, on the 6th of January, 1839, and were so continued, without any change, and without any action of the school committee thereon, until the 1st of June, 1847, when the committee, at a meeting duly called for the purpose, passed the following vote: " That the salaries of the teachers of the grammar schools be hereafter $800 per year, and that the salaries of the assistant teachers, and of the teachers of the primary schools, that have been $150, be hereafter $200 per year." The municipal year commenced on the 1st day of April.

It was admitted, that the plaintiff was entitled to recover at the rate of $700 a year, and that the defendants paid into the court below, by leave of the court, at the June term, 1848, the sum of $304, which was the full amount due the plaintiff, unless he was entitled (which was denied by the defendants) to recover a further sum under the vote of the school committee, before recited, of June 1st, 1847.

The amount specially appropriated by the city council of Salem for the salaries of teachers for the municipal year 1847 was $17,025, and the amount actually paid during the the same year was $16,326·43. But there was due and unpaid, at the close of that year, for the salary of the plaintiff, the sum of $304, and there were occasional vacancies in some of the schools, in the office of assistant teacher, during the year, but for which the amount specially appropriated would have been expended. The salaries of all the teachers, under the vote of June 1st, 1847, would have amounted to $18,500, exceeding the amount actually appropriated for that purpose $1875.

*A. Holbrook,* for the plaintiff.

*O. P. Lord,* for the defendants.

The opinion of the court was delivered at the October term, 1850.

FLETCHER, J. The important question, in this case, is whether the plaintiff is entitled to the salary of $800, according

to the vote of the committee of June 1st, 1847. It is not de-nied, that it was the intention of the committee, by their vote, to contract, and that they did thus contract, with the teachers for their salaries; but it is denied, that this contract was binding on the city. ·

It is maintained, on the part of the defendants, that they alone have the power of determining the amount of money which shall be raised for teachers; that the committee, in making their contracts with the teachers, must keep within the amount appropriated to this object by the city; that the committee have no power to bind the city beyond the amount which the city may think proper to raise; and, in fact, that the power of the committee may be limited, restricted, or taken away by the city.

The powers of school committees are expressly given and particularly specified and defined by statute. The inhabit-ants of any town, at their annual meeting, are to choose, by written ballots, a school committee, consisting of three, five, or seven persons.

Special provisions for cities, in regard to the number of the school committee, and the manner in which they shall be chosen, are contained in the respective charters.

The powers to be exercised by this committee are given in the most general terms. They are to " have the general charge and superintendence of all the public schools in the town." Rev. Sts. *c.* 23, § 10. The school committee have the whole power to examine teachers, and no one can legally be a teacher in any public school, until he has received from the school committee a written certificate of his qualification. The school committee are to select and contract with the teachers of the town and district schools. *St.* 1838, *c.* 105, § 2. This power is expressly given by the statute. It is given in positive and unqualified terms. By this statute, the committee has the power, absolutely and unconditionally, to agree upon the salaries of the teachers. There is no power given to any other men, or body of men, to contract with the teachers, and this power is given by the statute, and not bv the town or city.

This general position is, of course, to be taken with the exception of the provision by statute, that the power of selecting and contracting with teachers may, by express vote of the town, be transferred from the superintending to the prudential committee; but that was not done in this case.

There are very obvious and strong reasons for intrusting this power exclusively to the committee. The committee have the general charge and superintendence of the schools; they judge of the qualifications of the teachers; they select the teachers for particular schools with direct reference to their fitness for those schools. But the power to select would be vain and nugatory without the power to fix the compensation. Whether a suitable teacher can be obtained for a particular school, will depend on the compensation offered. Whether a teacher shall be a person of high qualification or low qualification, whether the schools shall be good schools or poor schools, depends on the amount of compensation. Take away from the committee the power to fix the salaries of the teachers, and you take away from them the power to perform the duties, which the legislature have imposed on them.

The legislature have imposed on the committee the duty of seeing to it that the public schools are in a condition and of a character best calculated to advance the improvement and promote the good of the pupils. The character of the schools will depend on the character of the teachers, and the character of the teachers will depend on the compensation. The power to fix the compensation is chiefly intrusted to the committee, for the full, appropriate, and most useful discharge of their duties. This power the legislature, for the most satisfactory and conclusive reasons, have expressly given to them.

How can the city deprive the committee of a power expressly given by the legislature? To say that the city is rot bound to pay according to the contract of the committee, would be in effect to say, that the committee had no power to contract. It is said, that the inhabitants of a town or city have the power of determining the amount of money they will raise for schools. But this proposition cannot be maintained in

this general and unqualified form. The obligations, imposed on towns by the statute, are to provide schools of certain grades for certain prescribed lengths of time; and beyond these periods the law imposes no obligation. The law prescribes no amount of money which shall be raised, and fixes no limits to the amount which it may be necessary to raise. Towns are obliged to maintain schools for certain periods during the year, and the committee have the power to select and contract with the teachers. For the time during which the towns are obliged by law to keep the schools, they must pay such salaries as may be contracted for by the committee. The salaries can be fixed by law in no other way than by the committee. Taking this power away from the committee would break up the whole system established by law in regard to the public schools.

Whether there shall be any schools kept beyond the time required by the statute, is a matter depending wholly on the will and pleasure of the inhabitants of the towns. If the schools are continued, there is no one authorized by law to select and contract with the teachers but the committee. If the salaries contracted for by the committee are thought to be onerous, the town can stop the schools after the expiration of the time required by law. The only way left open by the statute for the town to reduce the expenses is not to continue the schools beyond the time required by the statute. There is no provision for the town to reduce the salaries, or to interfere with the contract made by the committee with the teachers.

But it is in the power of towns to resolve not to continue their schools beyond the limited period, during which the law expressly requires that they should be continued. Beyond these required periods, the towns have the power of controlling and limiting the times of keeping their schools, and in this way of controlling and limiting the amount of money to be raised for schools, though the towns have the right of raising as much money for this object as they may think proper, beyond what is positively required by law. The law fixes the smallest amount of instruction to be provided by

towns, leaving with towns the right to provide such further amount as they may think proper. In point of fact, the towns in the commonwealth, with very few if any exceptions, tax themselves for an amount of instruction very much beyond what is required by law. They act in this matter from higher and nobler motives and considerations, than merely the consideration of their strict legal obligation.

The plaintiff in the present case was permitted to go on in the discharge of his duties in his school, relying on his contract with the committee for his increased compensation, without any objection on the part of the defendants, who took no measures and intimated no wish to discontinue or terminate the school, and gave no notice to the plaintiff that his services were not wanted. The plaintiff, having performed the services sued for, in pursuance of a valid contract with the committee, the defendants are bound to pay him his compensation, according to the sum fixed by the committee, June 1st, 1847; the committee having full legal authority to make that contract, and by which, of course, the defendants are bound